THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD CARLSON, individually and on behalf of all others similarly situated, | CASE NO. C20-5476-JCC |
| Plaintiff, | ORDER |
| v. | |
| UNITED NATURAL FOODS, INC., and SUPERVALU, INC., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Donald Carlson's motion for conditional certification (Dkt. No. 38) of a collective action under the Fair Labor Standards Act ("FLSA").[1] Having thoroughly considered the briefing and the record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Plaintiff's motion.

## I.   BACKGROUND

Donald Carlson worked for Defendants SuperValu, Inc. and United Natural Foods, Inc. for nearly ten years as a Warehouse Coordinator, Customer Care Coordinator, Operations Coordinator, and Account Coordinator. (Dkt. No. 37 at 5.) He alleges that from September 2010 to February 2020, he worked over 40 hours per week; but because Defendants had misclassified

---

[1] Defendants seek leave to file a surreply, which Plaintiff does not oppose. (Dkt. Nos. 44–45.) The Court GRANTS this request and has considered Defendants' surreply. (*See* Dkt. No. 44-2.)

him as exempt under the FLSA, they failed to pay him required overtime. (*See id.* at 6.) In February 2020, Defendants reclassified Carlson's job as non-exempt under the FLSA. (*Id.*) After that, Defendants allegedly began "suffering and permitting" Carlson to work off-the-clock to avoid paying overtime. (*See id.* at 6–7.)

Carlson alleges that the same thing—misclassification as non-exempt, then reclassification and off-the-clock work—happened to other employees with jobs like his. (*See id.* at 6–9.) Defendants admit they didn't pay overtime before reclassifying Carlson in February 2020, but they deny liability or that it was they who had classified Carlson as FLSA-exempt. (*See, e.g.*, Dkt. No. 40 at 11.)

Carlson sued Defendants in May 2020. His operative complaint asserts claims under the FLSA and various Washington State employee protection statutes. (*See* Dkt. No. 37.) Only Carlson's FLSA claim is at issue in the instant motion, which asks the Court to certify a FLSA collective action. (*See* Dkt. No. 38.) This would allow him to notify similarly situated employees that they can "opt in" to this lawsuit. Carlson defines those to whom he would send notice, that is, the "collective," as follows:

> All current or former employees of [Defendants] in the United States who at any time between September 2017[2] and February 2020 performed customer account coordination activities while classified as exempt from overtime laws.

(Dkt. No. 37 at 4 (parenthetical omitted).) The parties apparently agree that, in addition to Carlson, this definition (at least arguably) covers 31 people. (Dkt. Nos. 38 at 10, 13, 41 at 13.)[3] The parties also agree that these 31 people worked at Defendants' facilities in either Washington State or Florida. (Dkt. Nos. 38 at 13, 41 at 5.) Like Carlson, 17 of the 31 were reclassified in February 2020

---

[2] The parties stipulated to tolling the statute of limitations in this matter from August 26, 2020, to February 3, 2021. (Dkt. Nos. 27, 31.) While Defendants object to any further tolling, they do not contest Carlson's assertion that the proposed collective period properly begins in September 2017.

[3] Defendants "do not admit that they . . . employed any of the 31 individuals who were reclassified, or that such individuals are properly within the collective definition. They will present argument on this issue . . . at the appropriate time." (Dkt. No. 41 at 13 n.6.) The Court cautions Defendants not to delay making arguments that would promote efficiency in this litigation if made sooner.

1   from FLSA-exempt to non-exempt—six in Washington and 11 in Florida. (Dkt. No. 41-5.) It is

2   unclear how many of the employees that were not reclassified worked in Washington versus

3   Florida.

## II.    DISCUSSION

### A.    Legal Standard.

A plaintiff moving for "conditional certification" seeks authorization to contact similarly situated employees using a judicially approved form of notice. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100–01 (9th Cir. 2018). Unlike class certification under Federal Rule of Civil Procedure 23, "[t] he sole consequence" of conditional certification "is the sending of court-approved written notice to workers who may wish to join the litigation." *Campbell*, 903 F.3d at 1101 (citation omitted). Conditional certification requires a plaintiff to establish the existence of other "similarly situated" employees. *See* 29 U.S.C. § 216(b); *Campbell*, 903 F.3d at 1109. Nonparties "are similarly situated . . . to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. Compared to class certification under Federal Rule 23, this standard "is fairly lenient and typically results in certification." *Rozeboom v. Dietz & Watson, Inc.*, 2018 WL 2266692, slip op. at 2 (W.D. Wash. 2018).

District courts in the Ninth Circuit have reached a "loose consensus" that the standard of proof for conditional certification is "akin to a plausibility standard," so that the "court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Campbell*, 903 F.3d at 1109. This Court has generally required a "modest factual showing," along with allegations, to satisfy the conditional certification standard. *See, e.g., Randall v. Integrated Commc'n Serv., Inc.*, 2021 WL 2328373, slip op. at 3 (W.D. Wash. 2021); *McNutt v. Swift Transp. Co. of Ariz., LLC*, 2020 WL 3819239, slip op. at 3 (W.D. Wash. 2020). Parties typically submit declarations as part of this process. *See Chetwood v. T-Mobile USA, Inc.*, 2020 WL 1689730, slip op. at 2–3 (W.D. Wash. 2020).

**B.    Scope of the Proposed "Collective."**

The parties raise two issues bearing on conditional certification: first, whether Mr. Carlson adequately demonstrates the existence of "similarly situated" employees; second, whether the Court has personal jurisdiction over Defendants for claims by employees in Florida.

1.   Plaintiff Has Made a "Modest Factual Showing" that Similarly Situated Employees Exist.

Carlson identifies two legal and factual issues that he shares with the proposed collective: (1) whether Defendants had a companywide policy before February 2020 of misclassifying employees as FLSA-exempt to avoid paying overtime; and (2) whether, after the February 2020 reclassification, Defendants had a policy of "suffering and permitting" those employees to work off-the-clock. (*See* Dkt. Nos. 37 at 6–7, 38 at 15–16.) Assuming Carlson provides sufficient factual support, these common issues would indeed establish that members of the proposed collective are similarly situated with Carlson. *See Campbell*, 903 F.3d at 1102 ("credible allegations" of a common policy that violates the FLSA "should suffice to make" employees similarly situated).

Regrettably, Carlson submits no affidavits to support his allegations. However, Defendants' only argument regarding pre-February 2020 claims is that Carlson must present evidence of other employees' job duties as performed (Dkt. No. 41 at 14), instead of the official job descriptions that he has provided, (Dkt. Nos. 39-4 through 39-6.) This asks too much of Carlson, who need only make a "modest factual showing."

As for post-February 2020 claims, Defendants argue that because Carlson's definition of the proposed collective does not require collective members to have been reclassified, some putative collective members have no such claims and thus are not situated similarly to Carlson. (*See* Dkt. No. 41 at 13; Dkt. No. 41-5 (defense evidence establishing that only 17 employees were reclassified).) That, however, does not prevent Carlson from establishing similarity, at least with respect to pre-February 2020 claims for unpaid overtime. Defendants' argument goes to the merits of the lawsuit and whether some opt-in plaintiffs might be unable to establish post-February 2020 claims—not whether they are similar enough to Carlson to justify authorizing him to contact them.

1    Moreover, for some members of the collective, the record contains sufficient evidence to
2    demonstrate similarity as to post-February 2020 "off-the-clock" claims. The February 2020 letter
3    Carlson received advising him of his reclassification suggests that multiple employees with his
4    same job title were reclassified as non-exempt. (*See* Dkt. No. 39-7 (suggesting the reclassification
5    was an effort to make job titles consistent "across the full [i]nternational organization").)
6    Defendants also admit they reclassified 17 other employees from exempt to non-exempt in
7    February 2020. (Dkt. No. 41-5.)[4]

8    While this evidence does not conclusively establish that everyone within Carlson's
9    collective definition is similarly situated, given the lenient standard for conditional certification,
10   the Court finds that Carlson has established the requisite modest factual showing. *See Campbell*,
11   903 F.3d at 1109 (explaining that a FLSA collective action involves two steps: first, a conditional
12   certification motion "at or around the pleading stage," and second, "at or after the close of relevant
13   discovery," an opportunity for the defendant to seek "decertification" of the collective).

14   2.   The Court Lacks Personal Jurisdiction Over Claims by Florida Employees.

15   Defendants argue that the Court should not grant conditional certification with respect to
16   employees who worked in Florida because the Court lacks personal jurisdiction over Defendants
17   for those employees' claims. Based on the current record, the Court agrees.[5]

18   A court cannot hear a case without personal jurisdiction over the defendant. *See generally*
19   *Daimler AG v. Bauman*, 571 U.S. 117, 125–27 (2014). Federal courts "ordinarily follow state law
20   in determining the bounds of their jurisdiction over persons." *Daimler*, 517 U.S. at 125 (citing Fed.
21   R. Civ. P. 4(k)(1)(A)). Because Washington's long-arm statute, *see* Wash. Rev. Code § 4.28.185,
22   permits personal jurisdiction to the full extent of the Due Process Clause, the Fourteenth

---

23   [4] Moreover, Defendants briefing suggests more than 17 employees may have been reclassified.
24   (Dkt. No. 41 at 13 n.6 (referencing "the 31 individuals who were reclassified").)

25   [5] The Court rejects Mr. Carlson's argument that Defendants waived their personal jurisdiction
     argument by not including it in their first Rule 12 motion. (*See* Dkt. No. 42 at 6.) That motion did
26   not implicate personal jurisdiction as to Florida employees' claims.

ORDER
C20-5476-JCC
PAGE - 5

Amendment governs this Court's personal jurisdiction analysis. *See, e.g., Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994).

The Supreme Court recognizes two kinds of personal jurisdiction, general and specific. A corporation is subject to general jurisdiction in a state where its contacts are "so 'continuous and systematic' as to render [it] essentially at home" there and thus amenable to suit on any claim. *Daimler*, 571 U.S. at 127. The model bases for general jurisdiction over a corporate entity are its state of incorporation and principal place of business. *Daimler*, 571 U.S. at 137. Defendants are not subject to general jurisdiction in Washington: United Natural and SuperValu are Delaware corporations with their principal corporate offices outside Washington. (*See* Dkt. Nos. 41-1 through 41-4.) Carlson does not contest this.

The issue is whether the Court has specific personal jurisdiction over Defendants for claims by Florida employees. Specific jurisdiction requires a plaintiff's claim to "be one which arises out of or relates to the defendant's forum-related activities." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017), the Supreme Court held that a California state court lacked personal jurisdiction over a nonresident defendant as to claims by nonresident plaintiffs who joined in a mass tort claim. As in *Bristol-Myers*, nothing in the current record suggests that Florida employees' claims arose out of any links between Defendants and Washington. For example, Carlson does not allege that Defendants performed payroll functions or made FLSA classification decisions in Washington or required Florida employees to travel there.

Carlson's assertion that *Bristol-Myers* (which involved multiple suits) does not apply to the FLSA context (which involves one lawsuit by a named plaintiff) makes little sense. There is "no doubt that every plaintiff who opts in to a collective action has party status," *Campbell*, 903 F.3d at 1104 (citation omitted), and therefore must establish personal jurisdiction. Suppose, for example, that a Florida employee had joined Carlson as a co-plaintiff in filing this action; under

1    *Bristol-Myers*, that employee would still have to establish specific jurisdiction in Washington even

2    though multiple plaintiffs have joined in a single complaint.

3    　　　Carlson does not dispute that Rule 4(k)(1)(A) ties federal personal jurisdiction to state long-

4    arm statutes and thus requires state-specific contacts to support specific jurisdiction. But, he

5    argues, because employees from Florida need not serve Rule 4 process to opt into the case, their

6    claims need only arise from Defendants' contacts with the nation as whole. (Dkt. No. 42 at 8–9.)

7    That might work if the FLSA authorized nationwide service of process, but it does not. *See Omni*

8    *Capital Int'l, Ltd. V. Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987) ("Congress knows how to

9    authorize nationwide service . . . when it wants to," and its failure to do so required application of

10   state long-arm statute). Florida employees would still need an independent basis[6] for specific

11   jurisdiction arising from Defendants' contacts with Washington. Carlson's logic would lead to

12   absurd results and encourage gamesmanship; different FLSA plaintiffs would face different

13   jurisdictional standards depending on whether they sue as named plaintiffs or opt in later.

14   　　　Carlson next invokes pendent personal jurisdiction, a judge-made doctrine under which a

15   court may hear a claim "for which there is no independent basis of personal jurisdiction so long as

16   it arises out of a common nucleus of operative facts" as a claim in the same suit for which there is

17   personal jurisdiction. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180

18   (9th Cir. 2005); *see also* 4A Wright & Miller, FED. PRAC. & PROC. § 1069.7 (4th ed. 2020). This

19   doctrine does not help Carlson. A court cannot exercise personal jurisdiction at all without a statute

20   or rule conferring it. *See Action Embroidery*, 368 F.3d at 1177. And unlike the statute at issue in

21   *Action Embroidery, see id.* at 1180, the FLSA does not authorize nationwide service of process.

22   Once again, this means that Washington's long-arm statute governs Florida employees' claims.

23   *See* Fed. R. Civ. P. 4(k)(1)(A). While some courts have exercised pendent personal jurisdiction

---

24

25   [6] *Cf. Reedsburg Bank v. Apollo*, 508 F.2d 995, 1000 (7th Cir. 1975) ("The general rule is that permissive intervention in an in personam action other than a class action must be supported by independent grounds of jurisdiction . . . ."); *accord Nat'l Am. Corp. v. Fed. Republic of Nigeria*, 425 F. Supp. 1365, 1368 (S.D.N.Y. 1977).

26

absent an anchoring claim under a federal statute authorizing nationwide service, *see, e.g.*, *Chavez v. Stellar Mgmt. Grp. VII, LLC*, 2020 WL 4505482, slip op. at 9–10 (N.D. Cal. 2020), the Ninth Circuit has never endorsed that approach; nor has it endorsed using this doctrine to extend a court's personal jurisdiction to reach claims asserted by a separate plaintiff.

Based on the foregoing, the Court will GRANT conditional certification with respect to members of the putative collective who worked in Washington but will DENY it with respect to employees in Florida.

### C.    Plan for Providing Notice to the Collective.

The parties contest three[7] issues regarding the process for sending notice to the collective: (1) the language of the notice itself, (2) whether Carlson may send a reminder, and (3) whether Defendants should be required to produce certain personal information regarding notice recipients.

#### 1.   Notice Content.

The Court agrees with Carlson that the description of "customer account coordination activities" is not unduly vague or confusing. Carlson's proposed notice lists specific job titles that dispel any ambiguity. (*See* Dkt. No. 39-1 at 2.) Moreover, given the Court's resolution of the personal jurisdiction issue, only 20 people at most will receive notice. (*See* Dkt. No. 41-5 at 2 (11 reclassified employees located in Florida).) This will make it relatively unburdensome to resolve disputes relating to the job duties or FLSA status of persons who Defendants admit are at least arguably within Carlson's definition of the collective. (*See* Dkt. No. 41 at 13 (acknowledging that "as many as 31 total individuals" may fall within the collective definition).)

The Court disagrees with Defendants that the notice must caution recipients about the risk they could be liable for Defendants' costs if unsuccessful. The FLSA itself is silent on whether opt-in plaintiffs are actually liable for costs. Moreover, the potential chilling effect of Defendants'

---

[7] Defendants initially argued that Carlson should not be allowed to maintain a website for potential opt-in Plaintiffs. But Carlson clarifies that the proposed website will be used only to permit people contacted by email or U.S. Mail to complete and submit a consent form, which Defendants do not oppose. (*See* Dkt. Nos. 41 at 15, 42 at 12–13.)

proposed language outweighs any utility it might provide. *See Douglas v. Xerox Bus. Servs., LLC*, 2015 WL 12930486, slip op. at 4 (W.D. Wash. 2015).

Defendants are correct, however, that opt-in plaintiffs need not consent for Carlson's counsel to represent them. Unlike a class under Rule 23, for which class counsel is typically appointed, every opt-in plaintiff has party status. *Campbell*, 903 F.3d at 1104. Thus, the notice and consent forms should be modified to "to state that participating plaintiffs may retain their own counsel." *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011); *accord Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012).

### 2.  Reminder Notice.

A reminder notice will help ensure that any opt-in plaintiffs who wish to participate are able to do so before the 60-day deadline. The Court is concerned, however, that leaving the reminder until 15 days before the deadline cuts it too close. Carlson must instead send the reminder to collective members who have not returned the consent form within 30 days after notice is sent.

### 3.  Information to be Produced.

Defendant objects to producing phone numbers, birth dates, or partial social security numbers. The Court agrees as to phone numbers: Carlson does not need phone numbers for people he is authorized to contact by U.S. Mail and email. In contrast, birthdates and the last four digits of social security numbers will help distinguish among people with common names; verify identities; and track address changes if notices are returned as undeliverable. Defendants need not provide full birth dates, though, just the year. *Cf.* Fed. R. Civ. P. 5.2(a) (public filings containing social security numbers or birthdates may include only the last four digits or the year, respectively).

### D.  Tolling.

Carlson asks the Court to toll the statute of limitations for claims by potential opt-in plaintiffs to account for any period beyond a month spent awaiting the Court's decision. Equitable tolling is appropriate to promote the interests of justice where the plaintiff is prevented from asserting a claim due to a defendant's wrongful conduct or when extraordinary circumstances

beyond the plaintiff's control caused an innocent delay. *See Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir.1999). The Court finds that the ends of justice favor tolling the statute of limitations to account for time spent awaiting the Court's decision. The statute of limitations will thus be tolled from April 16, 2021, to the date of this order. Defendants' assertion that Carlson seeks a nonjusticiable advisory opinion is unpersuasive. They previously recognized the justiciability of a tolling request when they joined Carlson in making one. (*See* Dkt. Nos. 26, 33–4.) Carlson does not seek tolling up to a hypothetical opt-in submission date, but rather only for the time it took the Court to rule, which is the same duration for everyone in the collective. *See Douglas v. Xerox Bus. Servs, LLC*, 2014 WL 11320703, slip op. at 4 (W.D. Wash. 2014).

### III.   CONCLUSION

For the foregoing reasons, Carlson's motion for conditional certification and tolling (Dkt. No. 38) is GRANTED in part and DENIED in part. Conditional certification is granted as to employees within Carlson's proposed collective definition who worked in Washington State (the "Conditional Collective") but denied as to those who worked in Florida. The statute of limitations for claims by people within the Conditional Collective is tolled from April 16, 2021, through the date of this Order.

Defendants' motion to file a surreply (Dkt. No. 44) is GRANTED.

Additionally, the Court ORDERS that, within 14 days of the date of this Order:

(1)    The parties will submit proposed forms of (a) notice by mail, (b) notice by e-mail, (c) a reminder, and (d) consent forms that comply with this Order; and

(2)    Defendants will produce to Carlson the information identified in Part II.C.3 of this Order for all employees located in Washington State that fit Carlson's collective definition.

DATED this 14th day of August 2021.

1

2

3

John C. Coughenour
UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
C20-5476-JCC
PAGE - 11